CITY OF EAST CHICAGO, INDIANA *v.* SEUBERLI.

[No. 16,469.   Filed January 21, 1941.]

*Loyd J. Cohen* and *Allen P. Twyman,* both of East Chicago, for appellant.

*Paul F. Rountree,* of Evanston, Illinois; and *Henry W. Peterson,* of East Chicago, for appellee.

STEVENSON, P. J.—This action was brought by the appellee to recover a salary alleged to be due him for the year 1934 for his services as a member of the Board of Public Safety of the City of East Chicago, Indiana, appellant herein.

The complaint was in three paragraphs, to each of which a demurrer was addressed. The court overruled this demurrer and this ruling constitutes the first error assigned on appeal. To this complaint answers in five paragraphs were filed. Replies in general denial to each affirmative paragraph of answer closed the issues and the case was submitted to a jury for trial. The jury returned a verdict for the appellee in the sum of $900.00. Judgment was rendered thereon and a motion for new trial was filed. The court overruled this motion and this ruling constitutes the second error assigned on appeal.

The complaint alleged generally that the appellant is, and was at all times referred to, a municipal corporation in the State of Indiana and was a city of the second class, having a population of more than 35,000. The complaint alleges that prior to January 1, 1933, the appellee was duly appointed by the then Mayor of the City of East Chicago as a member of the Board of Public Safety of said city; that he duly qualified as such officer and assumed the duties thereof and performed the same continuously from the day of his appointment until the first day of January, 1935. The complaint further alleged that during all such time, a city ordinance, No. 1789, passed September 27, 1927, by the Common Council of the City of East Chicago, was in full force and effect, which ordinance fixed and

established the salary for the members of the Board of Public Safety at $800.00 per year. The appellee further alleged that during the year 1933 he voluntarily accepted a reduction in his salary and agreed with the Mayor of the City of East Chicago that his salary should be $60.00 per month for the calendar year 1934. The appellee further avers that he filed his claim for his salary as a member of the Board of Public Safety for the year 1934 but that no part of the same has been paid. The complaint further alleges that on December 10, 1934, the Common Council of the City of East Chicago by its Ordinance No. 2116 appropriated the sum of $2,160.00 for the payment of salaries of the members of the Board of Public Safety for the year 1934. Judgment was accordingly prayed in the sum of $720.00. This complaint was subsequently amended to include a prayer for interest on this amount.

The demurrer addressed to this complaint challenges the sufficiency of the facts stated to constitute a cause of action for the reason, among others, that the complaint shows on its face that the salary scale established by the ordinance of 1927 for the members of the Board of Public Safety had been abolished by Chapter 233, Acts 1933.

In support of the demurrer, the further contention was made that the complaint shows upon its face that no provision had been made for a salary for the members of the Board of Public Safety for the year 1934 as required by Chapter 233, Acts 1933. The question therefore presented requires an interpretation of the act above indicated.

Section 10 of Chapter 233, Acts 1933 (§ 48-1222, Burns' 1933), provides: "The provisions of any law now in effect in so far only as said provisions fix or purport to fix the salaries of any elective or appointive

officer and/or employees of any civil city of this state and the provisions of any laws now in effect in so far only as they fix or purport to fix the salary of any member of any board, commission, department or institution maintained or operated by any civil city, are hereby repealed upon the taking effect of this act. . . ."

The appellant contends that the effect of this provision is to repeal the salary ordinance No. 1789 passed by the City of East Chicago in 1927 and that there was accordingly in effect no law fixing the appellee's salary for the year 1934. The appellee on the other hand contends that by the provisions of Section 8½ of the above designated act the salary of the office was not abolished but provision was made for the continuation of such salary until January 1, 1935.

Section 8½ reads as follows:

"Where in any city the provisions of this act will abolish, combine, or consolidate any of the offices of any city separately officered at the time of the taking effect of this act, such abolishment, combination or consolidation of offices shall not, by mandate of this act, be effected until January 1, 1935, but such abolishment, combination or consolidation may, by action of the common council, be effected prior to such date, as provided in this act; and until such abolishment, combination or consolidation becomes effective, such offices shall be officered as before the passage of this act, but salaries of the officials serving in such offices shall be provided for and regulated as provided in this act on and after January 1, 1934."

It will be noted from a reading of this section that even though the statute did not require an abolishment of the offices of the Board of Public Safety until January 1, 1935, it did require that the salaries of such offices, if continued, should be established and regulated under the provisions of this act.

In our opinion, there is no conflict between the provisions of Section 10 above quoted and the provisions of Section 8½ in so far as the abolishment of the ■ office of the members of the Board of Public Safety is concerned. The law establishing and fixing the salary of such office, however, was abolished by Section 10 of the Act and if the municipality desired to continue the office until January 1, 1935, salaries for the official serving in such office must be provided for in the manner "as provided in this Act on and after January 1, 1934." Section 21 of the act provides that, "The common council of each and every city shall, by ordinance duly enacted on or before the first Monday in September, 1933, and thereafter on or before the first day of April of the year in which elections for election of city officers are held, fix the annual salaries of all officers provided for in this act at not to exceed the amounts herein specified, and such salaries when so fixed for such officers shall not be changed during their respective terms of office."

It is our opinion that the duty imposed upon the common council by this section to "fix the annual salaries of all officers provided for in this act" is sufficiently broad to include either appointed or elected officials, but if it does not include all appointive officers, further provisions of Section. 10 above quoted which gives the mayor of the city authority to appoint additional officers, deputies, employees, and assistants, provides that "the salaries of each and all such appointive officers . . . other than those fixed by the common council under the provisions of this act, shall be fixed by the mayor subject to the approval of the common council, which may reduce but in no event raise the salary so fixed." This same section further provides that "All salaries fixed by the mayor with the approval of the common

council in accordance with the provisions of this act, shall be fixed on or before the first Monday in September of each year for the next calendar year immediately ensuing." These are the only provisions in the law which authorize the fixing of salaries for members of the Board of Public Safety as officers of the City of East Chicago for the year 1934.

There is no allegation in the complaint which alleges the adoption by the common council of any salary ordinance passed pursuant to the provisions of this act nor is there any allegation that the mayor fixed such salaries with the approval of the common council for these particular offices. In the absence of such an ordinance there was no law in force and effect January 1, 1934, which fixed the salary for the appellee as a member of the Board of Public Safety. The appropriating ordinance passed December 10, 1934, could not and did not tend to perform this function.

The question, in its last analysis, is, therefore, whether the appellee, as a member of the Board of Public Safety for the City of East Chicago, having been regularly appointed and having discharged the duties of his office for the calendar year 1934, can recover a salary therefor in the absence of law which fixed and established such salary. It is our opinion that this question must be answered in the negative. A salary is an incident of an office only when such salary is provided for by law. *City of Indianapolis* v. *Martin* (1910), 45 Ind. App. 256, 89 N. E. 599; *Board, etc.* v. *Chapman* (1899), 22 Ind. App. 60, 53 N. E. 187. In the last mentioned case this court held, page 63: "Where one lawfully holding public office has rendered official service pertaining to the office, under a lawful regulation fixing the rate of compensation for such service,

he may claim such compensation at such rate upon principles of contract and equity." It will be noted however that this right to recover for such official services is predicated upon the condition that such services were rendered under a lawful regulation fixing the rate of such compensation. It follows, therefore, that public officers have no claim for official services rendered except where and to the extent that compensation is provided by law. *Board of Commissioners of Carroll Co.* v. *Gresham* (1885), 101 Ind. 53.

The question presented to this court in the case of *Watts* v. *City of Princeton* (1911), 49 Ind. App. 35, 96 N. E. 658 was quite similar to the one now under consideration. After reviewing several authorities, this court said:

> "In none of the cases cited by appellant, nor in any that we have examined, do we find where any court has held that a city is liable to one of its officers, or its appointees on any of its boards, upon an implied contract for services rendered as such officer, or as a member of such board, where the legislature, in creating such office or board, expressly provided that the salary of such officer or member of such board should be fixed by an ordinance of the common council. On the other hand, we think the authorities on the subject, especially those cited and quoted from, are all to the effect that such officer, or the member of such board, is limited to the compensation fixed by such ordinance, and until such ordinance is passed, fixing such salary, he has no cause of action for such services that he can enforce in the courts." Page 40.

As was said by our Supreme Court recently, "An officer is only entitled to the fees allowed by statute, and before an allowance is made to him he must point out the particular statute authorizing the allowance." *Applegate, County Auditor,* v. *State*

*ex rel., Pettijohn* (1933), 205 Ind. 122, 123, 185 N. E. 911. In order to enable the appellee to recover in this case, it was necessary that he allege and prove the existence of the ordinance which fixed and established the compensation for his official services. *City of Brazil* v. *McBride* (1879), 69 Ind. 244.

For failure to contain such allegations, the complaint was accordingly defective and the demurrer addressed thereto should have been sustained. The court erred in overruling such demurrer. Since this judgment must be reversed because of this error in overruling the demurrer to the complaint, we deem it unnecessary to discuss the further assignments of error and propositions in support thereof as presented in appellant's brief.

The judgment of the trial court is reversed with instructions to sustain the appellant's motion for new trial and to sustain the appellant's demurrer to the complaint and for further proceedings consistent with this opinion.

Judgment reversed.

NOTE.—Reported in 31 N. E. (2d) 71.