STATE of Indiana, Plaintiff-Appellant,

v.

Paul H. NEWBERN, The Travelers Indemnity Company, and Indiana Insurance Company, Defendants-Appellees.

No. 1-679A162.

Court of Appeals of Indiana, First District.

Dec. 26, 1979.

Theodore L. Sendak, Atty. Gen., Jack R. O'Neill, Deputy Atty. Gen., Indianapolis, for plaintiff-appellant.

Marvin E. Clanin, Anderson, Steven J. Strawbridge, Indianapolis, for defendants-appellees.

LOWDERMILK, Presiding Judge.

## STATEMENT OF THE CASE

Plaintiff-appellant State of Indiana brings this appeal after the Henry Circuit Court granted summary judgment in favor of defendants-appellees Paul H. Newbern, The Travelers Indemnity Company, and Indiana Insurance Company in the State's action to recover $104,711.49 allegedly misspent by Newbern while he served as Controller of the City of Anderson.

## FACTS

In 1969 the Common Council for the City of Anderson authorized the acquisition of a group hospital and surgical benefits insurance policy for the City's personnel.

Prior to January 1, 1974, the Board of Public Safety for the City of Anderson entered into agreements with the Fraternal Order of Police, Local No. 48, and with the Anderson Fire Fighters Association, Local 1262, obligating the City to expend public funds for group health and hospitalization

insurance premiums for forty retired policemen and firemen. The Common Council subsequently appropriated funds for this obligation. Newbern, as Controller, approved warrants for payment of the premiums. In 1978 the Common Council specifically ratified the earlier agreements and the payments of premiums.

The State brought suit against Newbern and against his sureties for recovery of the amount expended for insurance premiums on behalf of the retired policemen and firemen during the years 1974–1977. The Henry Circuit Court granted summary judgment in favor of Newbern and his sureties. From that judgment the State brings this appeal.

### ISSUES

1. Are retired policemen and firemen included in the definition of "employee" provided by IC 1971, 19–10–4–1(4) (Burns Code Ed.)?

2. Is Paul H. Newbern, as Controller of the City of Anderson, personally liable for the $104,711.49 paid for insurance premiums on behalf of retired policemen and firemen?

### DISCUSSION AND DECISION

*Issue One*

IC 19–10–4–1, *et seq.* authorize the purchase of group insurance by public employers on behalf of their employees. IC 19–10–4–1(4) defines "employee" as "an elected or appointed official or a full-time employee whose services have continued uninterruptedly for a period of at least thirty [30] days."

The State argues that the term "employee," as defined above, does not include those persons who were retired from the police force and fire force in Anderson. We agree. By giving the words of IC 19–10–4–1(4) their common meaning, and by reading IC 19–10–4–1 in conjunction with the other sections of the chapter, we conclude that retired employees were not included in that group of persons contemplated by the General Assembly to be affected by the chapter. This conclusion is reinforced by the fact that the General Assembly amended the chapter in 1979 to specifically provide a definition of "retired employee" while retaining the former definition of "employee."

*Issue Two*

The State contends that Newbern is personally liable for the amount expended on the insurance premiums for retired workers. The State relies upon the following paragraph of IC 1971, 18–1–6–11 (Burns Code Ed.):

"Fifth. If any warrant presented to the controller contains an item for which no appropriation has been made, or there shall not be a sufficient balance of the proper fund for the payment thereof, or *which, for any other cause, should not be approved,* he shall not approve the same, and shall notify the proper department of the facts. And *if the controller shall approve any warrant contrary to the provisions hereof, he shall be individually liable for the amount of the same to the holder thereof; and, to the extent of his bond, his sureties shall also be liable.* Whenever, a warrant shall be presented to him, he shall have power to require evidence that the amount claimed is justly due, and, for that purpose, may summon before him any officer, agent or employee of any department of the city, or any other person, and examine him upon oath relative to such warrant or claim. Such person so summoned shall be subject to the provisions of this act touching the examination of persons by the council, such controller having the same power as such body in relation to such examination." (Our emphasis.)

We summarize the following events in order to put Newbern's actions in proper perspective:

1. By ordinance adopted June 30, 1969, the Common Council of the City of Anderson authorized the acquisition of a group hospital and surgical benefits insurance policy for City personnel.

2. Prior to January 1, 1974, the Board of Public Safety of the City of Anderson reached agreement with the Fraternal Order of Police, Local No. 48, and with the Anderson Fire Fighters Association, Local 1262, obligating the City to pay the insurance premiums which are the subject of this litigation.

3. The Common Council of the City of Anderson appropriated funds with which to make the premium payments.

4. Newbern approved warrants for payment of the premiums, as agreed, with money appropriated for that purpose by the Common Council.

■ The State insists that Newbern is liable for the amount expended because "other cause" existed for not approving such warrants. This reasoning imposes a duty upon Newbern to know that the obligation incurred by the agreements made by the Board of Public Safety was not a proper obligation to be assumed by the City. It also imposes upon Newbern a duty to know that the funds appropriated by the Common Council for the payment of the premiums could not properly be expended for that purpose. We are not persuaded that the General Assembly intended to make a city controller a guarantor for all money-related decisions of his colleagues in city government.

IC 18–1–6–11 includes this paragraph: "It shall be the duty of the controller:

\* \* \* \* \* \*

Third. To keep separate accounts for each specific item of appropriation made by the council to each department, and require all warrants to state specifically against which of such items the warrant is drawn. Each account shall be accompanied by a statement in detail in separate columns of the several appropriations, the amount drawn on each appropriation, the unpaid contracts charged against it, and the balance standing to the credit of the same. He shall not suffer any appropriation to be overdrawn or the appropriation for one [1] item of expense to be drawn upon for any other purpose, or by any department other than that for which the appropriation was specifically made, except on transfers authorized by ordinances. He shall sign and issue all orders for money upon the city treasury, and no money shall be paid out by the treasurer except upon such order. In case of stated salaries fixed by law or ordinance, the controller shall issue orders therefor, but, in all other cases, he shall require a warrant to be presented to him from the head of the department under whose supervision the obligation has been incurred, or, if not so incurred, then such warrant shall be drawn by the mayor. In no case shall the controller draw an order on the treasury unless there be at the time money in the treasury properly applicable to the payment thereof. The expenditures incurred by the controller himself must be approved in writing by the mayor before any order is drawn therefor."

Nowhere do we find an indication that a controller has a duty to second-guess both the Board of Public Safety and the Common Council on a matter which, it might be argued, comes within the City's general powers to enter into contracts.[1]

■ The State would have this court read IC 18–1–6–11 to impose strict liability upon a controller. We decline to hold that a controller is individually strictly liable— regardless of the absence of fraud or malice or willful misconduct or even negligence on

1. The State has cited no statute which specifically *denies* a City Authority to incur such an obligation.

The State has also argued that, by approving the warrants, Newbern established a system of pensions when state law had pre-empted the area of pensions for firemen and policemen. We are not persuaded that the premium payments satisfy the definition of a pension upon which the State relies; it could be argued that the premiums were paid not out of appreciation for past services but in order to obtain current services from active firemen and policemen. We do not pursue this topic further, however, because our resolution of Issue Two applies regardless of whether the payments were improper as insurance premiums or as pensions.

his part—for any and all expenditures which are after-the-fact determined to be inappropriate. Such an imposition of potential liability would make the position of controller totally unattractive to all persons except those whose ineptness in financial matters had left them with only negligible personal assets. Instead, we hold that when a controller acts in good faith, reasonably believing that he has the authority to approve expenditure of the money for the stated purpose, he will not be held individually liable for the money if the expenditure is later determined to be inappropriate.

In its motion for summary judgment the State argued that Newbern must be held liable because it was not within the powers of the City of Anderson to make such expenditures. The State has not suggested that Newbern acted negligently or that he acted maliciously, willfully, fraudulently, or in any other manner which would evince a lack of good faith on his part. We therefore hold that the trial court correctly granted summary judgment in favor of Controller Newbern.

Judgment affirmed.

BUCHANAN, C. J. (by designation), and NEAL, J., concur.